UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

№ 07-CV-4254 (JFB)

---

IN RE: RICHARD J.F. NAVIN,

Debtor.

PETER VAN WITT,

Appellant,

VERSUS

SEAN-MARIE NAVIN-OLLER AS EXECUTRIX OF THE ESTATE OF RICHARD J.F. NAVIN,

Appellee.

---

MEMORANDUM AND ORDER
December 19, 2007

---

JOSEPH F. BIANCO, District Judge:

The instant case is an appeal from the voluntary bankruptcy proceeding of Debtor Richard J.F. Navin ("Debtor"), under Chapter 11 of the Bankruptcy Code, in the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court"). Peter Van Witt ("Van Witt" or "Appellant"), tenant of an apartment owned by the now-deceased Debtor's estate (the "Estate"), appeals from an Order of the Honorable Dorothy Eisenberg, United States Bankruptcy Judge, dated September 4, 2007 (the "Order"), holding that Van Witt no longer possessed a right of first refusal in this apartment. Appellee Sean-Marie Navin-Oller ("Appellee" or "Navin-Oller"), is Debtor's daughter and Executrix of the Estate. Van Witt argues that the Bankruptcy Court did not have jurisdiction to determine whether Appellant continued to possess a right of first refusal and, alternatively, that the Bankruptcy Court should have held an evidentiary hearing prior to making its determination. For the reasons set forth below, after a *de novo* review, the Court finds Appellant's arguments on appeal to be without merit and affirms the Order of the Bankruptcy Court.

I. BACKGROUND

A. Facts

The following facts are not in dispute.

On or about September 15, 1998, Appellant entered into a lease with Debtor (the "1998 Lease") for an apartment located at 160 West 88th Street, New York, New York (the "apartment"). Pursuant to the 1998 lease, which was to expire on April 30, 1999, Van Witt posted a $6400 security deposit.

Debtor and Van Witt "extended and modified" the 1998 lease several times between 1998 and October 30, 2001, according to a Memorandum of Lease Debtor and Van Witt executed on October 30, 2001 (the "Memorandum of Lease").[1] (*See* Memorandum of Lease ¶ 1.) The Memorandum of Lease further extended Appellant's lease until April 15, 2003 and provided Appellant with a "right of first refusal" for the apartment that would "expire twelve (12) months after the expiration of the Lease and any lease modification or extension, provided Tenant be given the option to continue leasing the [apartment] on reasonable terms and conditions. . . ." (*Id.*)

On August 12, 2003, Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code. At the time, Appellant was remitting his rent for the apartment to the Sheriff of the City of New York to satisfy Debtor's obligations in a matrimonial action. However, by letter dated August 26, 2003, Debtor's counsel informed Appellant that "[b]y operation of federal bankruptcy law," Van Witt had to remit rent to Debtor's counsel (the "August 23 Letter"). (See August 23 Letter at 1.)

On May 12, 2004, Van Witt wrote to Debtor regarding the terms of "a new lease agreement." (*See* Letter by Van Witt, dated May 12, 2004 (the "May 12 Letter").) In the May 12 Letter, Van Witt stated that he was "hesitant" about entering into an agreement because of various repairs he wanted Debtor to undertake in the apartment. (*See* May 12 Letter at 1.) Van Witt proposed that he would take care of the repairs at his own cost in exchange for a 20-year lease at a fixed price. (*Id.* at 2.)

In an undated letter in response, Debtor stated: "I am at some loss to understand the direct intent and motivation behind your letter of May 12, 2004, as to whether a lease is now warranted." (*See* Undated Letter at 1.) Debtor further stated: "The Garden duplex apartment, which you currently occupy, is for rent, as continued, for one more year, through the terms of the past lease, for $3700. . . . **The terms proposed by you at the end of your letter are not acceptable in part or in whole.**" (*Id.* (emphasis in original).)

On November 28, 2004, Van Witt wrote to Debtor (the "November 28 Letter"). Appellant explained that he "received your proposed lease this past Saturday. . . . I am . . . willing to accept the proposed rent of $4,070 per month for the next lease term. You indicated in your phone call to me that the next lease term would become effective January 1, 2006, which I also agree with . . . . I expect the lease term to expire on December 31, 2006." (*Id.*) Van Witt further stated: "I quickly reviewed the lease itself and expect the lease to be in a form substantially identical to the lease that has been in effect for the past seven years." (*Id.*)

By letter dated November 18, 2005, Debtor's counsel provided Van Witt – who continued to occupy the apartment – with a copy of an Order of the Bankruptcy Court

---

[1] Other than the Memorandum of Lease, these lease extensions are not part of the record on appeal.

dated November 13, 2005 (the "November 18 Letter"). As Debtor's counsel explained in the November 18 Letter, this Order mandated that Van Witt begin remitting rent payments directly to Debtor's counsel. Appellant did so.

On December 9, 2005, Van Witt sent Debtor a revised and executed "proposed lease." On December 23, 2005, Debtor's bankruptcy counsel sent Appellant a fully-executed lease (the "2005 Lease") and instructed him to "continue sending the rent checks to our office as you have been doing." The 2005 Lease, dated December 8, 2005, did not expressly provide Van Witt with a right of first refusal.

On December 11, 2006, the Bankruptcy Court approved Debtor's Amended Plan of Reorganization (the "Plan"). As the Bankruptcy Court's Order Confirming Amended Plan of Reorganization, dated December 11, 2006 (the "Confirmation Order") reflected, Debtor was able to pay his creditors in full by refinancing the property at which the apartment is located (the "property").

Debtor passed away on January 6, 2007 and Appellee began attempting to sell the property. On May 21, 2007, Navin-Oller emailed Appellant regarding this potential sale (the "May 21 Email"). In the May 21 Email, Appellee explained: "On May 1, 2007, I wrote saying 'we are willing to give consideration to an offer you might want to make to purchase the Brownstone.' You responded with a letter including the memorandum of agreement you had/have with my father and now the estate. I am cognizant of your 'right of first refusal' and aware of what it means. If you are interested in making an offer, please contact one of the realtors."

(May 21 Email at 1.)

On June 26, 2007, Navin-Oller moved before the Bankruptcy Court for the following relief:

> (a) pursuant to § 105 of the Bankruptcy Code, reopening this bankruptcy case; (b) upon the reopening of this case, declaring that the right of first refusal set forth in a Pre-Petition Real Property Lease dated September 30, 1998 is deemed rejected and is not binding upon the Debtor; (c) directing the New York City Register to indicate on the records of the New York City Register that the memorandum of lease dated as of October 30, 2001 . . . is rejected and of no force and effect. . . .

(*See* Motion dated June 26, 2007 (the "Motion" at 1.) On August 21, 2007, the Bankruptcy Court heard oral argument on the motion and ruled from the bench.[2] On September 4, 2007, the Bankruptcy Court memorialized the August 21 ruling by issuing the Order, which is the subject of the instant appeal.[3] The Order held as follows:

> 1) the Pre-Petition Real Property Lease dated September 30, 1998 ("Pre-Petition Lease") expired on

---

[2] The relevant portions of that ruling are discussed *infra*.

[3] The Order amended a previous, substantially similar Order of the Bankruptcy Court dated August 30, 2007.

3

April 15, 2003, prior to the date the Debtor filed a petition for relief under Chapter 11. . . 2) pursuant to the month-to-month tenancy that existed between the Debtor and Mr. Van Witt from April 15, 2003 through December 31, 2006, the right of first refusal set forth in the Pre-Petition Lease and recorded with the New York City Register was not expressly re-affirmed by the Debtor and Mr. Van Witt; and 3) the Debtor and Mr. Van Witt entered into a new lease dated January 1, 2006, which did not incorporate any of the terms of the Pre-Petition Lease, including any right of first refusal in favor of Mr. Van Witt.

(Order at 2.) The Order granted Appellee all of the relief she requested in the Motion. (*Id.*)

B. Procedural History

Van Witt filed the instant appeal on October 11, 2007. On October 22, 2007, Appellant filed an Order to Show Cause, requesting that the Court stay enforcement of the Order. The Court held a hearing that day. Counsel for Appellee informed the Court at this hearing that Navin-Oller did not anticipate an imminent sale of the apartment and agreed to notify the Appellant and the Court if there were any developments regarding the sale of the property. Based upon that stipulation, the Court denied Appellant's request for a stay without prejudice to renewal of such application if an imminent sale were to develop.[4]

Appellant filed his moving brief in the instant appeal on November 1, 2007. Appellee responded on November 16, 2007. Appellant replied on November 28, 2007. The Court heard oral argument on December 12, 2007.

II. DISCUSSION

A. Standard of Review

The Court will review the Bankruptcy Court's legal conclusions *de novo* and its factual findings for clear error. *See In re Hyman*, No. 05-7026-BK, 2007 WL 2492789, at *3 (2d Cir. Sept. 6, 2007); *see also In re Bayshore Wire Prods.*, 209 F.3d 100, 103 (2d Cir. 2000) ("Like the District Court, we review the Bankruptcy Court's findings of fact for clear error [and] its conclusions of law *de novo* . . . ."); *accord In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 988-89 (2d Cir. 1990).[5]

---

[4] Further, by letter dated November 6, 2007, counsel for appellee requested that the Court schedule a conference to address Van Witt's alleged "interfer[ence]" with Navin-Oller's efforts to sell the apartment by failing to give her real estate agent sufficient access. By Order dated November 26, 2007, the Court asked Appellant to respond to Appellee's letter by November 9, 2007. Appellant failed to so respond. By letter dated November 29, 2007, counsel for Appellant explained that counsel did not respond because of an electronic filing error. Counsel for Appellant also denied that Van Witt was impeding access to the apartment. The Court need not resolve this issue as part of the instant appeal.

[5] Although Appellant did not specifically argue in his papers on this appeal that the Bankruptcy Court erred in reopening the bankruptcy proceeding, Appellant implicitly suggests that,

B. Preservation of Jurisdictional Issue for Appeal

Appellee argues in opposition to the instant appeal, as a threshold matter, that the issue of the bankruptcy court's jurisdiction is not properly before the Court because "Van Witt never raised the issue of abstention before the Bankruptcy Court." (Appellee's Opp. at 8-10.) The Court notes that although Van Witt labels his argument "abstention" in his appeal papers before the Court, his argument does not include the abstention statute, but rather relates to whether the Bankruptcy Court had jurisdiction as part of the core bankruptcy proceeding.[6]

This Court agrees with the Appellee that the clear focus of Appellee's written opposition in the Bankruptcy Court was the lack of formal notice to him regarding any confirmation hearing. However, the jurisdictional issue, while not the focus of Van Witt's arguments before the Bankruptcy Court, was raised briefly by Van Witt. For instance, in his sur-reply affirmation, counsel for Appellant not only argued the notice issue and the merits regarding the continued existence of the right of first refusal, but also made a conclusory argument that the merits should be decided by a state court. Appellant made a similar claim at the August 21, 2007 oral argument before the Bankruptcy Court. (Transcript of Oral Argument on August 21, 2007 ("Tr.") at 13) ("[T]his is really now a two-party dispute that turns on the interpretation of state law which is more properly let [sic] the state court judge determine it. There's no purpose for the bankruptcy court to be involved.").

Although Appellee contends that this conclusory argument is insufficient to preserve such an objection, the Second Circuit has made clear that, although a party can consent to a bankruptcy court's assumption of "core" jurisdiction by failing to timely object, "a court should not lightly infer from a litigant's conduct consent to have private state-created rights adjudicated by a non-Article III bankruptcy judge." *In re Men's Sportswear, Inc.*, 834 F.2d 1134, 1138 (2d

---

since the Bankruptcy Court allegedly had no jurisdiction over this issue, it abused its discretion in reopening. Because the Court finds that the Bankruptcy Court had jurisdiction over the right of first refusal issue (as discussed *infra*), any argument that the Bankruptcy Court abused its discretion in reopening fails for the same reason. Section 350(b) of the Bankruptcy Code "gives the bankruptcy court broad discretion in deciding whether to reopen a case, and the decision to grant or deny a motion to reopen is binding on review absent a clear showing that there was an abuse of discretion." *In re Emmerling*, 223 B.R. 860, 864 (2d Cir. 1997); *see also In re Chalasani*, 92 F.3d 1300, 1307 (2d Cir. 1996) (explaining that decisions to reopen bankruptcy proceedings are afforded a generous standard of review because "such decisions invoke the exercise of a bankruptcy court's equitable powers, which is dependent upon the facts and circumstances of each case"). Moreover, the Second Circuit has specifically held that courts may reopen bankruptcy proceedings where, as here, "there were no creditors before the court to be benefited," and after "the creditors received all they were entitled to." *In re Graff*, 255 F. 241, 241-42 (2d Cir. 1918) ("Applications to reopen are almost always made by creditors, but we have no doubt the court may in a proper case exercise its discretion, when the fact is presented by the bankrupt.").

[6] Moreover, at oral argument before this Court, counsel for Appellant agreed that he intended to argue that the Bankruptcy Court lacked jurisidiction under 28 U.S.C. § 157, and not under the abstention statute (28 U.S.C. § 1334).

5

Cir. 1987). Here, not only was the jurisdictional issue raised by the party, but was in fact decided by the Bankruptcy Court. In particular, in response to Appellant's jurisdictional claim at oral argument, the Bankruptcy Court commented: "Isn't it part of the bankruptcy case, you're claiming that – you're claiming that the bankruptcy case doesn't affect it. I think I have to make that decision before I can send it back to the state court." (Tr. at 14.) The Court later explained:

> Although [Mr. Van Witt] asserts that this Court need only be concerned with whether his rights are affected by the plan and order of confirmation the status of his claims are relevant as well. He seeks to have the state court fix the rights of the parties but this Court must consider, assuming that his claims survived the effect of the plan and order of confirmation, whether Mr. Van Witt has any rights to protect.

(*Id.* at 18) Thus, the Court concluded that it had jurisdiction over the matter. (*Id.* at 18-19.)

Under these circumstances, this Court finds that the jurisdictional issue was raised and rejected by the Bankruptcy Court and the Court will address that issue, under a *de novo* standard of review, on appeal.

C. The Bankruptcy Court's Jurisdiction

Appellant argues that the Bankruptcy Court did not have jurisdiction pursuant to 28 U.S.C § 157(b) to decide the Motion. Section 157(b)(1) states that bankruptcy judges "may hear and determine all cases under title 11 and all core proceedings under title 11. . . ." 28 U.S.C. § 157(b)(1). Section 157(b)(2) provides a non-exhaustive list of such "core proceedings," which include "matters concerning the administration of the estate." Appellant argues that the Order pertained solely to a question of state contract law and, thus, was not core to the bankruptcy proceeding. For the reasons set forth below, the Court disagrees and finds, after a careful *de novo* review of the record, that the Bankruptcy Court had proper jurisdiction to decide this issue.

In *Northern Pipeline Construction Company v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982), the Supreme Court held that Article III of the Constitution barred bankruptcy courts from deciding breach of contract claims based on state law. 458 U.S. at 88 n.40. In response to *Marathon*, in 1984, Congress passed the Bankruptcy Amendments and Federal Judgeship Act, which amended Section 157 to define "core" and "non-core" proceedings. *See In re Petrie Retail, Inc.*, 304 F.3d 223, 229 (2d Cir. 2002) ("We have previously recognized that, in making the core/non-core distinction, Congress realized that the bankruptcy court's jurisdictional reach was essential to the efficient administration of bankruptcy proceedings and intended that the core jurisdiction would be construed as broadly as possible subject to the constitutional limits established in *Marathon*.") (citation and quotation marks omitted). Thus, "[s]ince the 1984 Amendments, both the Supreme Court and [the Second Circuit] have concluded that the *Marathon* holding was a narrow one and have broadly construed the jurisdictional grant in the 1984 Bankruptcy Amendments." *Cent. Vermont Public Serv. Corp. v. Herbert*, 341

6

F.3d 186, 191 (2d Cir. 2003); *see also Mt. McKinley Ins. Co. v. Corning Inc.*, 399 F.3d 436, 448 (2d Cir. 2005) ("We have held that "'core proceedings' should be given a broad interpretation that is close to or congruent with constitutional limits as set forth in *Marathon*, and that *Marathon* is to be construed narrowly.'") (quoting *In re U.S. Lines*, 197 F.3d 631, 637 (2d Cir. 1999)).

Specifically, post-1984 Amendments, "'[b]ankruptcy courts are not precluded from adjudicating state-law claims [as core proceedings] when such claims are at the heart of the administration of the bankruptcy estate.'" *Cent. Vermont*, 341 F.3d at 191; *see also Weiner's Inc. v. T.G. & Y. Stores Co.*, 191 B.R. 30, 33 (S.D.N.Y. 1996) ("Under the Second Circuit's test, even wholly state law based claims may fall within the core of the bankruptcy court's power."). However, "contract claims are not rendered core simply because they involve property of the estate. . . . A general rule that . . . proceedings are core because they involve property of the estate would 'create[] an exception to *Marathon* that would swallow the rule.'" *In re U.S. Lines*, 197 F.3d at 637 (quoting *In re Orion Pictures Corp.*, 4 F.3d 1095, 1102 (2d Cir. 1993)). Consequently, the Second Circuit has explained that "[w]hen deciding whether a contract action is a core proceeding, we have considered '(1) whether a contract is antecedent to the reorganization petition; and (2) the degree to which the proceeding is independent of the reorganization.'" *In re Millennium Seacarriers, Inc.*, 419 F.3d 83, 97 (2d Cir. 2005) (quoting *In re U.S. Lines*, 197 F.3d 631, 637 (2d Cir. 1999)).

With respect to the first consideration, "the critical question in determining whether a contractual dispute is core by virtue of timing is not whether the cause of action accrued post-petition, but whether the contract was formed post-petition. The bankruptcy court has core jurisdiction over claims arising from a contract formed post-petition." *In re U.S. Lines*, 197 F.3d at 637-38 (citing *In re Ben Cooper, Inc.*, 896 F.2d 1394, 1399-1400 (2d Cir. 1990)); *Weiner's*, 191 B.R. at 33 ("[A] bankruptcy court may accept jurisdiction over post-petition contract actions, even though contract claims are state law claims. . . . [P]ost-petition contracts are integral to the administration of the estate, and core to the bankruptcy power."). Here, while the 1998 Lease and the Memorandum of Lease preceded Debtor's petition, the question before the Bankruptcy Court was whether the right of first refusal continued through Van Witt's month-to-month tenancy and, most importantly, into the post-petition 2005 Lease. As Judge Eisenberg explicitly stated at oral argument:

> The first issue which is dealt with is whether the claim of Mr. Van Witt, a tenant of property owned by the debtor's estate, survives the plan and order of confirmation. . . . Although [Van Witt] asserts that this Court need only be concerned with whether his rights are affected by the plan and order of confirmation the status of his claims are relevant as well. He seeks to have the state court fix the rights of the parties but this Court must consider, assuming that his claims survived the effect of the plan and order of confirmation, whether Mr. Van Witt has any rights to protect.

7

(Tr. at 18.) Because the issue before the Bankruptcy Court thus pertained to a post-petition contract, the cases Appellant cites for the proposition that bankruptcy courts do not have jurisdiction over pre-petition contract disputes are inapposite, (*see* Appellant's Mem. at 11-12),[7] and the first consideration set forth in *Millennium* is satisfied.

With respect to the second consideration set forth in *Millennium*, *i.e.,* the degree to which the proceeding is independent of the reorganization, "[t]he . . . inquiry hinges on 'the nature of the proceeding.'" *In re U.S. Lines*, 197 F.3d at 637 (quoting *In re S.G. Phillips Constructors, Inc.*, 45 F.3d 702, 707 (2d Cir. 1995)). In particular, [p]roceedings can be core by virtue of their nature if either (1) the type of proceeding is unique to or uniquely affected by the bankruptcy proceedings. . . . or (2) the proceedings directly affect a core bankruptcy function." *Id.*; *see also In re Petrie*, 304 F.3d at 229 (same); *Boudle v. CMI Network, Inc.*, 07-CV-2820, 2007 U.S. Dist. LEXIS 82336, at *11-*12 (E.D.N.Y. Nov. 6, 2007) ("A matter is a core proceeding if it invokes a substantive right provided by the Bankruptcy Code or if it could only arise in the context of a bankruptcy case."). Certainly, a dispute over the presence of a right of first refusal in a residential lease could occur outside the context of a bankruptcy case and, thus, is not unique to bankruptcy proceedings. However, for the reasons set forth below, the proceedings here directly affected a core bankruptcy function.

First, the Bankruptcy Court explicitly anticipated in the Confirmation Order that the Bankruptcy Court, even after Debtor's plan was confirmed, would retain jurisdiction over matters related to, among other things, the interpretation or enforcement of the plan, as well as disputes regarding entitlement to the Debtor's assets. Specifically, the Bankruptcy Court expressly adopted Article X of the Plan, which stated that the Bankruptcy Court would retain jurisdiction to:

> modify the plan pursuant to Section 1127 of the Bankruptcy Code or to remedy any defect or omission or reconcile any inconsistency in the Confirmation Order to the extent authorized by the Bankruptcy Code;. . . .
> hear and determine all controversies, suits and disputes, if any, as may arise in connection with the interpretation or enforcement or implementation of the plan;. . . . [and]
> determine all questions and disputes regarding recovery of and entitlement to the Debtor's assets and determine all

---

[7] The Court notes that disputes over pre-petition contracts may also be core, if they significantly affect core bankruptcy functions. *See In re U.S. Lines*, 197 F.3d at 638 ("Notwithstanding that the Trust's claims are upon pre-petition contracts, we conclude that the impact these contracts have on other core bankruptcy functions nevertheless render the proceedings core."); *see also In re Delta Air Lines, Inc.*, 07 Civ. 2649, 2007 U.S. Dist. LEXIS 81216, at *10 (S.D.N.Y. Oct. 30, 2007) ("Here, the effect of Delta's claim on core bankruptcy functions outweighs the importance of the contract's pre-petition origin."). Here, the Court need not rely on this reasoning because the key contract was the 2005 Lease. As set forth *supra*, however, the Court finds that the instant dispute did affect core bankruptcy functions and, therefore, the Bankruptcy Court had jurisdiction even if the 1998 Lease or Memorandum of Lease was the relevant contract.

8

> Claims and disputes between the Debtor and any other entity, whether or not subject to an action pending as of the Confirmation Date.

(Plan ¶¶ 10.01.5, 10.01.6, 10.01.13.) The Court finds it beyond question that the Bankruptcy Court was well within the core jurisdictional ambit expressly anticipated in the Confirmation Order in considering a dispute over the existence of a right of first refusal in the property, which was the key asset of the Debtor and the refinancing of which provided the basis for Debtor's reorganization. *See In re Millennium*, 419 F.3d at 97 ("Bankruptcy courts retain jurisdiction to enforce and interpret their own orders.") (citing *In re Petrie*, 304 F.3d at 230).

Moreover, even if the Confirmation Order did not explicitly provide for the Bankruptcy Court's consideration of Van Witt's dispute, the nature of this dispute directly affects a core bankruptcy function, namely, the administration of Debtor's estate. *See* 28 U.S.C. §§ 157(b)(2)(A).[8] Again, Van Witt is asserting a right of first refusal in the property that Debtor refinanced in order to satisfy all of his creditors. Indeed, refinancing this property constituted the sole "Means for Execution of the Plan," as approved in the Confirmation Order. (*See* Plan at Article VIII; Confirmation Order ¶ X.) Because the Bankruptcy Court thus specifically designated a course for this asset in the Confirmation Order, any post-petition claims or potential encumbrances that are raised with respect to that asset implicate the Bankruptcy Court's jurisdiction over the Plan. Appellant's dispute, therefore, affected a core function of the Bankruptcy Court.[9]

In sum, the Court finds that the dispute giving rise to the instant appeal was core to Debtor's bankruptcy proceeding and, therefore, the Bankruptcy Court exercised proper jurisdiction to decide the Motion.[10]

---

[8] The Court is aware that in determining whether a proceeding affects a core bankruptcy function, courts take into account whether the non-Debtor party to the dispute has filed a proof of claim. *See, e.g., In re S.G. Phillips*, 45 F.3d at 705 ("[W]e held that when a creditor files a proof of claim, the bankruptcy court has core jurisdiction to determine that claim. . . ."); *In re Winimo Realty Corp.*, 270 B.R. 108, 120 (S.D.N.Y. 2001) ("[W]here a defendant to a pre-petition contract action has filed a proof of claim against the estate, the defendant has sought the benefits of the bankruptcy court's jurisdiction and the matter will be deemed core") (citation and quotation marks omitted). Van Witt has filed no such claim here. Nevertheless, this issue is not dispositive. *See, e.g., In re Winimo*, 270 B.R. at 123 (finding that even if court disregarded the existence of a proof of claim, the proceeding was "still a core matter because it 'directly affect[s] a core bankruptcy function'") (quoting *In re U.S. Lines*, 197 F.3d at 637).

[9] As noted in footnote 5, *supra*, although Appellant argues that the Court could not consider this issue because the creditors had already been paid, the Bankruptcy Court still has the discretion to re-open the bankruptcy and address a dispute regarding whether a potential claim or encumbrance on one of Debtor's assets that was part of the plan had survived.

[10] Appellant did not argue in his moving papers that 28 U.S.C. §§ 1334(c)(1) or (c)(2) mandated the Bankruptcy Court to abstain or afforded the Bankruptcy Court the discretion to abstain from deciding the Motion, nor did Appellant make this argument in his reply brief, even though Appellee specifically argued in her opposition brief that abstention was unwarranted under this statute. Further, as discussed *supra*, counsel for Appellant agreed at oral argument that he was not making an

D. Evidentiary Hearing

Appellant argues that the Bankruptcy Court should have held an evidentiary hearing prior to issuing the Order because determining whether Van Witt's right of first refusal survived Debtor's Chapter 11 proceeding required the Bankruptcy Court to decide an issue of material fact, *i.e.,* whether Van Witt and Debtor intended this right to survive. For the reasons set forth below, the Court disagrees with Appellant and finds that such an evidentiary hearing was unnecessary and, in any case, that the Bankruptcy Court considered all relevant evidence submitted by the parties and correctly found that this right did not survive.

As a threshold matter, although Appellant claims on appeal that the Bankruptcy Court should have held an evidentiary hearing, Appellant never requested such a hearing before the Bankruptcy Court once the Bankruptcy Court determined that it had jurisdiction over the dispute.[11] Moreover, even though the Bankruptcy Court did not hold an evidentiary hearing, the Bankruptcy Court had the benefit of *all* of the evidence presented by the parties, and Appellant has not pointed the Court's attention to any testimony or additional evidence that Van Witt sought to have the Bankruptcy Court consider or that would have changed the Bankruptcy Court's holding if the Bankruptcy Court had held an evidentiary hearing.[12]

Instead, Appellant bases his claim that an evidentiary hearing was warranted on *White Castle Sys., Inc. v. Blohm*, 807 F.2d 313 (2d Cir. 1986) and *Coinmach Corp. v. Fordham Hill Owners Corp.*, 770 N.Y.S.2d 310 (N.Y. App. Div. 2004). However, Van Witt's reliance on these cases for this proposition is misplaced. *White Castle* and *Coinmach* stand for the holding that a right of first refusal does not extend as a matter of law into a month-to-month tenancy unless the parties to the lease expressly affirm this extension through their actions. *See White Castle*, 807 F.2d at 315 ("[T]erms of a prior lease are not automatically implied in a holdover tenancy as a matter of law when, for example . . . the circumstances tend to refute any intent to continue the applicability of a particular provision which is not an essential element of a landlord-tenant relationship."); *Coinmach*, 770 N.Y.S.2d at 314-15 (determining that right of first refusal was not "expressly reaffirmed" in month-to-month tenancy because "plaintiff's actions were inconsistent with its present contention that the right of first refusal survived the expiration of the lease"). Neither *White Castle* nor *Coinmach*

---

abstention argument under Section 1334, but a jurisdictional argument under Section 157. In any event, the Court has considered the relevant factors under Section 1334 and has determined that mandatory or discretionary abstention is unwarranted here.

[11] Indeed, at oral argument before this Court, in response to the Court's inquiry, counsel for Appellant was unable to point to any instance in the record where he requested such a hearing. Although Appellant argued to the Bankruptcy Court that it should not hear the issue because it should be decided in some future state court action after an evidentiary hearing, the Appellant never requested such a hearing *in the Bankruptcy Court* even after the Court made clear that it had rejected Appellant's jurisdictional argument and was going to address the issue based upon the documentary evidence submitted by the parties.

[12] Notably, at oral argument, when adducing the evidence in support of his position, counsel for Appellant only identified documents that were presented to and fully considered by the Bankruptcy Court.

10

states that an evidentiary hearing is mandated in determining whether a right of first refusal survives the expiration of a lease and the Court declines to find such a requirement existed here. Determinations regarding the need for evidentiary hearings are made on a case-by-case basis depending on the nature and materiality of any disputed facts regarding the legal issue that needs to be decided.

Here, even though Appellant vaguely suggests on the basis of *White Castle* and *Coinmach* that an evidentiary hearing may have assisted the Bankruptcy Court in deciding the intent of the parties during the month-to-month tenancy, any alleged ambiguity during that period was completely vitiated by the 2005 Lease, which did not provide for a right of first refusal and contained a clause stating: "Tenant has read this lease. All promises made by the Landlord are in this Lease. There are no others." (2005 Lease ¶ 28.) As the Bankruptcy Court explicitly stated at oral argument:

> Although Mr. Van Witt produced an undated letter from the debtor in response to a letter that he had sent on May 12, 2004 stating that the apartment is for rent for one more year through the terms of the past lease for thirty-seven hundred dollars, it is unclear whether the parties intended to extend the right of first refusal as well. . . . Particularly, since Mr. Navin himself is dead and the only letters presented do not prove the case. . . . It is telling that upon receiving the draft of the new lease Mr. Van Witt responded with a letter stating that he could not agree with many of the terms and conditions including [sic] therein and expected the lease to be in a form substantially identical to the lease that had been in effect for the past seven years, and I'm quoting from his letter which is Mr. Van Witt's exhibit. Despite these reservations he did enter into and signed off on a new lease that states, "Tenant has read this lease, all promises made by the landlord are in this lease, there are no others. This lease may be changed only by an agreement in writing signed by and delivered by each party." There is no reference to the memorandum of lease or any right of first refusal. This post-petition lease is a separate and distinct contract from the prior lease and does not represent a modification or extension of such prior lease.

(Tr. at 20-21.)

The Court thus finds that the Bankruptcy Court did not err in failing to hold an evidentiary hearing, especially in the absence of a request to do so by Appellant and the clear basis in the contractual documents for her ruling that no right of first refusal survived the bankruptcy proceeding.

Moreover, the Court has carefully examined the entire record on appeal and finds that the Bankruptcy Court did not err in finding that Van Witt's right of first refusal has expired. Again, as the Bankruptcy Court pointed out at oral argument, Appellant

11

entered into the 2005 Lease, which – as neither party disputes – does not expressly contain a right of first refusal.[13] This clear absence of the right of first refusal in the 2005 Lease provides irrefutable proof that the right did not survive Debtor's bankruptcy. Indeed, Van Witt has provided no evidence to rebut the 2005 Lease.[14]

Thus, the 2005 Lease provided the Bankruptcy Court an independent grounds to find that the right of first refusal did not survive Debtor's bankruptcy. Nevertheless, the Bankruptcy Court also considered whether this right survived Van Witt's prior month-to-month tenancy and, for the reasons set forth below, correctly found that it did not.

As explained *supra*, under *White Castle* and *Coinmach*, Van Witt and Debtor would have had to evince their intention for the right of first refusal to continue through the month-to-month tenancy in order for this right not to be extinguished. However, correspondence between Debtor and Appellant belies the existence of any such intention. In the May 12 Letter and the November 28 Letter, Van Witt explicitly stated his understanding that he and Debtor were negotiating a "new lease agreement" for the "next lease term." (May 12 Letter at 1; November 28 Letter at 1.) Further, in the November 28 Letter, Van Witt stated that he expected the "proposed lease" to be "substantially identical to the lease that has been in effect for the past 7 years." (November 28 Letter at 1.) Appellant thus showed concern that at the outcome of his negotiations with Debtor, the new lease might not contain all of the same provisions as the past lease. This concern contradicts Van Witt's assertion in the instant appeal that he understood the right of refusal automatically continued from the month-to-month tenancy into the 2005 Lease. Van Witt's correspondence with Debtor therefore contradicts any assertion that the parties intended the right of first refusal to survive.[15]

---

[13] The existence of the 2005 Lease also represents a key distinction between the instant case and *White Castle*. In the latter case, the court did not have a new lease on which to rely and had to discern the parties' intent largely through their actions during the month-to-month tenancy. *See* 807 F.2d at 14-15. Here, the Bankruptcy Court had the benefit of a new lease, containing a merger clause, that undisputedly did not contain a right of first refusal. The Bankruptcy Court's holding, therefore, rests on even firmer ground than did the court's holding in *White Castle*.

[14] Although Appellant argues on appeal that the 2005 Lease was an extension rather than a new lease, and that the right of refusal in the Memorandum of Lease thus survived, there is absolutely no support for that contention. The 2005 Lease makes no reference to being an extension, nor does it suggest that it is incorporating any terms or conditions from prior agreements. To the contrary, as noted *supra*, the 2005 Lease contains all of the terms and makes clear that "[a]ll promises made by the Landlord are in this Lease." (2005 Lease ¶ 5.). Therefore, the Bankruptcy Court did not err in concluding that "[t]his post-petition lease is a separate and distinct contract from the prior lease and does not represent a modification or extension of such prior lease." (Tr. at 20-21.) Moreover, at oral argument when this Court asked for any case which has found a right of first refusal survives even where a subsequent lease did not contain such a right, counsel for Appellant could cite no case law in support of this proposition.

[15] The May 12 Email does not change the Court's analysis. *White Castle* and *Coinmach* pertain to the intentions of the landlord and tenant at the time of the month-to-month tenancy. The understanding or intention of a landlord's Executrix expressed years after the month-to-month tenancy expired is, therefore, irrelevant.

12

In sum, after a *de novo* review, the Court finds that the Bankruptcy Court did not err in holding that the right of first refusal did not extend into the month-to-month tenancy or the 2005 Lease and, thus, that the Memorandum of Lease is null and void. *See Coinmach*, 770 N.Y.S.2d at 315 ("Like the plaintiff in *White Castle*, Coinmach's actions in this case were consistent with a waiver of the contractual right of first refusal, which it did not attempt to assert until August 23, 2002, over a year after the parties' lease had expired."). As the transcript of oral argument before Judge Eisenberg shows, the Bankruptcy Court carefully considered the entire record, including all of the evidence submitted by both parties, and correctly determined that the parties did not intend the right of first refusal to survive Van Witt's month-to-month tenancy and that, in any event, the new 2005 Lease obviated any such previously-existing right.

### E. Notice

Although Appellant finds it "very significant[]" that Debtor did not provide Van Witt "formal notice" of Debtor's bankruptcy proceeding, (Appellant's Mem. at 6), Appellant does not explain the legal significance of this purported lack of notice to the instant appeal except to cite general "due process concerns." (Appellant's Reply at 3.) Nevertheless, the Court has considered whether Van Witt was entitled to notice of Debtor's bankruptcy proceeding and finds, for the reasons set forth below, that he was not and, in any case, the Bankruptcy Court correctly determined that he received actual notice.

Appellant argued before the Bankruptcy Court that Van Witt was a creditor of Debtor by virtue of his security deposit. (Van Witt's Opp. at 2.) However, a tenant does not become a creditor by virtue of a security deposit. Under New York law, "[w]henever money shall be deposited or advanced on a contract or license agreement for the use or rental of real property . . . such money . . . shall continue to be the money of the person making such deposit or advance . . . and shall not . . . become an asset of the person receiving the same. . . ." *See* N.Y. Gen. Oblig. Law § 7-103(1). Courts interpreting analogous state statutes have found that security deposits do not give rise to a creditor-debtor relationship. *See In re Cold Harbor Assocs., L.P.*, 204 B.R. 904, 913 (E.D. Va. 1997) ("Because the law of Virginia . . . holds that security deposits remain solely the property of a tenant until such time as it violates a covenant in the lease agreement. . . . [these deposits] do not give rise to a creditor-debtor relationship.").

Moreover, even if Van Witt were entitled to notice based on his purported interest in the apartment, the Court finds that Van Witt received actual notice of the bankruptcy. As Judge Eisenberg noted, (*see* Tr. at 9), Van Witt remitted his rent payments to Debtor's explicitly-identified bankruptcy counsel. As stated *supra*, Van Witt also corresponded with such counsel regarding the negotiation of the 2005 Lease – and, indeed, entered into the 2005 Lease – while Debtor was in Chapter 11. With each correspondence from Debtor's counsel and at each stage of negotiation with Debtor regarding the 2005 Lease, Van Witt received actual notice of the bankruptcy proceeding. *See In re Weiner's*, 191 B.R. at 32 ("[A]n entity contracting with the debtor post-petition is on notice that it has potentially submitted itself to the bankruptcy court's jurisdiction."). Because the Bankruptcy Court correctly determined that Appellant received actual notice of the bankruptcy proceeding, he

13

cannot avoid the bankruptcy court's jurisdiction.[16]

### III. CONCLUSION

For the foregoing reasons, after carefully considering the submissions under a standard of *de novo* review, the Court concludes that the Bankruptcy Court correctly determined that the Appellant's right of first refusal in the apartment did not survive the Debtor's bankruptcy proceeding and, therefore, this Court affirms the Bankruptcy Court's Order, dated September 4, 2007.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: December 19, 2007
Central Islip, New York

\* \* \*

Appellant is represented by Gary Fischoff, Esq. and Brian P. Schechter, Esq. of Steinberg, Fineo, Berger & Fischoff, P.C., 40 Crossways Park Drive, Woodbury, New York, 11797. Appellee is represented by Marc Pergament of Weinberg, Gross & Pergament, LLP, 400 Garden City Plaza, Suite 403, Garden City, New York, 11530.

---

[16] Moreover, at oral argument, Appellant was unable to identify any prejudice from this purported lack of notice. At the point when the Bankruptcy Court determined that it was going to consider the right of first refusal issue and thereby potentially impact Appellant's rights, Van Witt was aware of that issue and was able to fully argue his position on the merits through counsel prior to the Bankruptcy Court's determination.